### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TOBATEX, INC., a Georgia corporation, and M.R.M. ENERGY, INC, a Georgia statutory close corporation, on their own behalf and on behalf of all others similarly situated, | * * * * * | |
| | * | CASE NO. |
| Plaintiffs, | * * | |
| Versus | * * | SECTION |
| | * * | |
| BP, p.l.c.; BP PRODUCTS NORTH AMERICA, INC.;  BP AMERICA, INC.; BP AMERICA PRODUCTION COMPANY; BP CORPORATION NORTH AMERICA, INC; BP EXPLORATION & PRODUCTION, INC.; TRANSOCEAN, LTD.; TRANSOCEAN OFFSHORE DEEP WATER DRILLING, INC.; TRANSOCEAN DEEPWATER, INC.; HALLIBURTON ENERGY SERVICES, INC.; AND CAMERON INTERNATIONAL CORPORATION f/k/a COOPER CAMERON CORPORATION | * * * * * * * * * * * | MAGISTRATE  JURY DEMANDED |
| Defendants. | * | |

**************************************************

## CLASS ACTION COMPLAINT

Plaintiffs TOBATEX, INC. and M.R.M ENERGY, INC., individually and on behalf of all others similarly situated, alleges, as follows:

-1-

## INTRODUCTION

1.      This is a class action, brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover damages suffered by Plaintiffs and the Class Members as a result of the oil spill that resulted from the explosion and fire aboard, and subsequent sinking of the oil rig Deepwater Horizon (hereinafter "Deepwater Horizon"or "Oil Rig") on April 20, 2010, at about 10:00 p.m. central time on the outer Continental Shelf, off the Louisiana coast. Following the sinking of the Oil Rig, substantial quantities of crude oil leaked from the oil well upon which the Deepwater Horizon was performing completion operations and from the pipe connected to it (drill stack).  This oil leak lasted for a substantial number of days and resulted in a fast-moving oil slick, which grew to 100 miles long by 45 miles wide, and headed towards and hit the Louisiana, Mississippi, Alabama and Florida coasts and causing detrimental effects upon the Gulf of Mexico's and the adjoining states' marine environments, coastal environments and estuarine areas.  The conduct of Defendants, and each of them, in failing to have in place necessary and appropriate safeguards to avoid this type of disaster, in causing the disaster and in failing to take prompt and effective measures to mitigate the effect of the disaster has resulted in and continues to result in widespread and foreseeable animosity, hatred, ill will, verbal and physical threats directed against and a decrease in purchases of motor fuel and other consumer products and services, loss of income, profits and goodwill sustained by independent service stations throughout the United States, including Plaintiffs, which sell motor fuel products under the BP name and logo, to their damage.

## PARTIES

2.      Plaintiff TOBATEX, INC. is a Georgia statutory corporation who, since prior to April 20, 2010, owns and operates one (1) services station in Georgia under the BP name and logo.  Plaintiff M.R.M ENERGY, INC. is a Georgia statutory close corporation who, since prior to April 20, 2010, owns and operates one (1) service station in Georgia under the BP name and logo.

3.      Defendant BP, p.l.c. is an international corporation doing business in the United States of America with its corporate headquarters at 1 St. James Square, London, United Kingdom. BP, p.l.c. maintains a corporate office in the United States of America at 501 Westlake Park Boulevard, Houston, Texas.

4.      Defendant BP Products North America, Inc. is a Maryland corporation with its principal place of business in Texas and is a BP, p.l.c. affiliated corporation. BP Products North America, Inc. may be served with process in accordance with the Federal Rules of Civil Procedure and law.

5.      Defendant BP America, Inc. is a Delaware corporation with its principal place of business in Illinois and is a BP, p.l.c. affiliated corporation. BP America, Inc. may be served with process in accordance with the Federal Rules of Civil Procedure and law.

6.      Defendant BP America Production Company is a Delaware corporation with its principal place of business in Texas and is a BP, p.l.c. affiliated corporation. Bp America Production Company may be served with process in accordance with the Federal Rules of Civil Procedure and law.

7.     Defendant BP Corporation North America, Inc; is an Indiana corporation with its principal place of business in Illinois and is a BP, p.l.c. affiliated corporation. BP Corporation North America, Inc; and may be served with process in accordance with the Federal Rules of Civil Procedure and law.

8.     Defendant BP Exploration & Production, Inc. is a Delaware corporation with its principal place of business in Texas and is a BP, p.l.c. affiliated corporation. BP Exploration & Production, Inc.; may be served with process in accordance with the Federal Rules of Civil Procedure and law.

9.     Defendant Transocean Ltd is a Swiss corporation with its principal place of business in Switzerlande and may be served with process in accordance with the Federal Rules of Civil Procedure and law.

10.     Defendant Transocean Offshore Deepwater Drilling, Inc. is a Delaware corporation and is a Transocean Ltd.-affiliated corporation doing business in the United States of America. Transocean Offshore Deepwater Drilling, Inc. may be served with process in accordance with the Federal Rules of Civil Procedure and law.

11.     Defendant Transocean Deepwater, Inc. is a Delaware corporation and is a Transocean Ltd.-affiliated corporation doing business in the United States of America. Transocean Deepwater, Inc. may be served with process in accordance with the Federal Rules of Civil Procedure and law.

12.     Defendant Halliburton Energy Services, Inc. (hereafter "Halliburton") is a Delaware corporation with its principal place of business in Texas.  Halliburton may be served with process in accordance with the Federal Rules of Civil Procedure and law.

13.     Defendant Cameron International Corporation f/k/a Cooper Cameron Corporation (hereafter "Cameron International") is a Delaware corporation with its principal place of business in Texas and may be served with process in accordance with the Federal Rules of Civil Procedure and law.

## CLASS DEFINITION

14.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, who are members of the following Class:

> All persons and entities who own or operate service stations in the United States under the name and logo of BP and who have sustained any legally cognizable loss and/or damages as a result of the April 20, 2010 fire and explosion which occurred aboard the Deepwater Horizon drilling rig, the oil spill resulting therefrom, and the conduct of Defendants, and each of them, related thereto.
>
> Excluded from the Class are:

a.     the Defendants and their parents, subsidiaries and affiliates;

b.     the officers and directors of any of the Defendants or their parents, subsidiaries and affiliates;

c.     any judge or judicial officer assigned to this matter and his or her immediate family; and

d.     any legal representative, successor, or assign of any excluded persons or entities.

## CLASS ACTION ALLEGATIONS

15.     **Numerosity of the class:** The proposed Class is so numerous that joinder is impractical. The disposition of the claims asserted herein through this class action will be more efficient and will benefit the parties and the Court.

16.     **Predominance of Common Questions of Fact and Law:** There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

i.      Whether Defendants caused and/or contributed to the fire, explosion and oil spill;

ii.     Whether Defendants' actions were negligent, grossly negligent and/or willful and wanton;

iii.    Whether the fire, explosion and oil spill have caused animosity, hatred and ill will by the consuming public toward the BP name and logo; and

iv.     The amount of damages Plaintiffs and the Class Members should receive in compensation.

17.     **Typicality:** Plaintiffs and the Class Members have suffered similar harm as a result of Defendants' actions.

18.     **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class because their interests do not conflict with the interests of the Class Members it seeks to represent. Plaintiffs have no claims antagonistic to

those of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions and litigation involving service stations.

19.     **Superiority:**   A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class Members is impracticable. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to this Court in which individual litigation of hundreds of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, and the prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expenses and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendants' conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

20.     The various claims asserted in the action are also certifiable under the provisions of Rules 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

a.     The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members;

b.     The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interests; and

c.      The questions of law or fact common to the Members of the Class predominate over any questions affecting only individual Members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## JURISDICTION & VENUE

21.     Jurisdiction is proper in this Court under, *inter alia,* 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which Plaintiffs are citizens of a State different from Defendants, and under 28 U.S.C. § 1332(a), because complete diversity exists among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Venue is proper in this Court under 28 U.S.C. § 1391, including subsections (a) and (c) thereof.

## FACTS COMMON TO THE CLASS

22.     Transocean Ltd., Transocean Offshore Deepwater Drilling, Inc. and Transocean Deepwater, Inc. (collectively hereafter "Transocean") are on information and belief the owners and/or operators if the Deepwater Horizon semi-submersible oil drilling rig, which was performing drilling completion in Mississippi Canyon Block 252 (MC252) in the Gulf of Mexico on April 20, 2010 (hereinafter the "Site").

23.     On information and belief, Transocean was performing drilling operations at the Site for and on leases granted by the Minerals Management Service to Defendants BP, p.l.c., BP Products North America, Inc.,  BP America, Inc., BP America Production Company, BP Corporation North America, Inc, and/or BP Exploration & Production, Inc. (collectively hereafter "BP").  Transocean knew or should have known that its improper conduct at the Site

-8-

would cause injury to the BP name and logo and to all persons and entities selling motor fuel and consumer products and services under that name and logo.

24.     BP is the holder of a lease granted by the Minerals Management Service, which allows BP to drill for oil and perform oil-production-related operations at the Site of the oil spill, and on April 20, 2010, operated the oil well that is the source of the oil spill.

25.     Upon information and belief, Cameron International manufactured and/or supplied the Deepwater Horizon's blowout preventers ("BOPs") that failed to operate upon the explosion, which should have prevented the oil spill. Upon information and belief, the BOPs were defective because they failed to operate as intended. To this extent, Cameron International is liable to Plaintiffs and the Class for its negligence, gross negligence, and/or willful, wanton, and reckless conduct which it knew or should have known would cause injury to the BP name and logo and to all persons and entities selling motor fuel and consumer products and services under that name and logo.

26.     Halliburton was engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed these duties, increasing the pressures at the well and causing and/or contributing to cause the fire, explosion, and resulting oil spill.  Halliburton knew or should have known that its improper conduct would cause injury to the BP name and logo and to all persons and entities selling motor fuel and consumer products and services under that name and logo.

27.     On April 20, 2010, Transocean was operating the semi-submersible oil drilling rig Deepwater Horizon at the Site in the in Mississippi Canyon Block 252 (MC252) in the Gulf of Mexico.

28.     On April 20, 2010, the Deepwater Horizon rig caught fire and exploded. As a result of the fire and explosion, the surviving crew of the Deepwater Horizon abandoned the rig. Of the 126-member crew, the fire and explosion killed eleven members and injured seventeen others, three of them critically.

29.     On April 22, 2010, the Deepwater Horizon sank.

30.     At all times material hereto, the Deepwater Horizon was owned, manned, possessed, managed, controlled, chartered and/or operated by Transocean and/or BP.

31.     As a result of the fire, explosion, and sinking of the Deepwater Horizon, the oil well drilled by the Deepwater Horizon began to leak crude oil into the Gulf of Mexico at a rate of at least 5,000 barrels (210,000 gallons) per day which continued for a substantial number of days .

32.     The fire and explosion on the Deepwater Horizon, its sinking and the resulting oil spill and adverse public reaction throughout the United States were caused by the negligence of Defendants, which renders them liable jointly, severally and in-solido to Plaintiffs and the Class Members for all their damages.

33.     The injuries and damages suffered by Plaintiffs and the Class Members were caused by Defendants' violations of numerous statutes and regulations, including, but not limited

to, statutes and regulations issued by OSHA and the United States Coast Guard, including the requirement to test the sub-sea BOP's at regular intervals.

34.    Defendants knew of the dangers associated with deep water drilling and failed to take appropriate measures to prevent damage to Plaintiffs and the Class Members through the damage to the BP name and logo.

35.    On information and belief, the spilled oil has not and will not simply evaporate off of the surface and subsurface of the water and is causing dangerous environmental contamination of the Gulf of Mexico and its shorelines, threatening sensitive wetlands and estuarine areas and thereby resulting in continuing animosity, hatred and ill will by the consuming public toward the BP name and logo.

36.    The conduct of Defendants, and each of them, in failing to have in place necessary and appropriate safeguards to avoid this type of disaster, in causing the disaster and in failing to take prompt and effective measures to mitigate the effect of the disaster have caused and will continue to cause in the future widespread and foreseeable animosity, hatred, ill will, verbal and physical threats and a decrease in purchases of motor fuel and other consumer products and services directed against independent service stations throughout the United States, including Plaintiffs',  which sell motor fuel products under the BP name and logo to their damage.

37.    There are many other effects from the oil spill that have not yet become known, and Plaintiffs reserve the right to amend this Class Action Complaint when additional information becomes available.

-11-

38.     The President of the United States has identified BP as the responsible party pursuant to 33 U.S.C. § 2714 (a), and BP has acknowledged its status as the party responsible for the oil spill in various public media and through various company officials, including BP American President and Chairman Lamar McKay's testimony before the United States Senate Energy and Natural Resources Committee.  This identification has resulted from the improper conduct of each of the defendants and has further damaged the BP name and logo.

39.     The injuries and damages suffered by Plaintiffs and the Class members were caused by Defendants gross negligence and willful (or, alternatively, negligent) violations of numerous federal statutes, standards, and regulations including, but not limited to, statutes and regulations issued by the United States Coast Guard the Occupational Safety and Health Administration ("OSHA") and/or Minerals Management Service ("MMS"), including the requirement to test the sub-sea blowout prevention at regular intervals.

## FIRST CLAIM

(Negligence, Gross Negligence, and Willful, Wanton and
Careless Disregard for Plaintiffs' Rights)

40.     Plaintiffs incorporate the allegations of paragraphs 1 through 39 above.

41.     Defendants, and each of them, were negligent, grossly negligent, and/or acted with willful, wanton, and careless disregard for the rights of Plaintiffs and the Class with regard to the operation of the Deepwater Horizon.

42.     Defendants, and each of them, are liable to Plaintiffs and the Class for:

-12-

      a.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants failed to adequately and thoroughly operate the offshore drilling rig Deepwater Horizon, which allowed the discharge of crude oil into the waters of the Gulf of Mexico;

      b.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants failed to provide adequate safeguard(s), including but not limited to the installation of a remote control acoustic switch, to prevent the discharge of crude oil in to the waters of the Gulf of Mexico;

      c.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants failed to comply with Federal and/or State Law;

      d.      Negligence per se for acting in contravention of established Federal and/or State Law;

      e.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants failed to properly inspect the Deepwater Horizon to assure that its equipment and personnel were fit for their intended purpose;

      f.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants failed to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had been so promulgated, implemented and enforced, would have averted the fire, explosion, sinking and oil spill;

-13-

g.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants operated the Deepwater Horizon with untrained and unlicensed personnel;

h.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants inadequately and negligently trained personnel and hired untrained or poorly trained personnel;

i.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants failed to implement policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

j.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants failed to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

k.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants failed to timely warn of the catastrophe;

l.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants failed to stop the oil release;

m.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants failed to provide appropriate accident-prevention equipment;

n.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants failed to observe and read gauges that would have indicated excessive pressures in the well;

o.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants failed to react to danger signs;

p.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, for providing BOPs that did not work properly;

q.      Negligence, gross negligence, and/or willful, wanton, and careless disregard for the rights of Plaintiffs and the Class, in that Defendants conducted well cementing and well cap cementing operations improperly; and

r.      Such other acts of negligence and omissions as will be shown at the trial of this matter, all of which acts are in violation of Federal laws and regulations and/or State laws and regulations applicable on the Outer Continental Shelf.

43.     As a direct and proximate result of the acts or omissions set forth in the preceding paragraphs, Plaintiffs and the Class have suffered or will suffer injuries and damages caused and/or contributed to be caused as a result of the negligence, gross negligence, and careless disregard for the rights of Plaintiffs and the Class.

## DAMAGES

44.     The acts and/or omissions of Defendants as set forth in the preceding paragraphs constitute negligence and/or gross negligence, negligence per se, willful, wanton, and careless

disregard for the right of Plaintiffs and the Class, and rendering Defendants, and each of them, liable to Plaintiffs and the Class for actual, compensatory and punitive damages.

45.     As a direct and proximate result of the conduct, actions, inactions, and behavior of Defendants, and each of them, as more fully set forth in the preceding paragraphs, Plaintiffs and the Class have suffered or will suffer and are entitled to receive from Defendants significant damages, including but not limited to damages for economic losses, including damages for the loss of profits and goodwill or impairment of earning capacity due to the injury and destruction of the BP name and logo; costs and expenses; and other incidental damages, all to the general damages of Plaintiffs and the Class, said damages being in an amount to be determined at a trial of this cause. Plaintiffs and the Class also seek pre-judgment and post-judgment interest in an amount not less than 10% per year and/or an amount provided by law.

46.     Plaintiffs and many other members of the proposed class have invested significant time, money, and other resources into branding, marketing, and/or advertising the delivery and/or use of motor fuel and consumer products and services through the BP name and logo.

47.     Due to the oil spill, the subsequent environmental damage and associated mitigation efforts, and the protection and/or remediation efforts, fishing, shrimping, oystering, and other commercial and non-commercial activities have been suspended and will likely continue to be legally and/or effectively reduced by the affects of the oil spill and/or by the effects of the chemicals, compounds, and/or substances used in attempts to mitigate and/or clean up the oil.

48.     In this regard, the oil spill and the contamination therefrom have caused and will continue to cause a direct and proximate loss of revenue and/or loss of earning capacity to Plaintiffs and other members of the proposed class, including, but not limited to, the fact that Plaintiffs and the class members have lost, are losing, and will likely continue to lose customers due to animosity towards the BP name and logo.

49.     The injuries to Plaintiffs and other class members were also caused by or aggravated by the fact that Defendants, and each of them, failed to take necessary actions to mitigate the danger associated with their operations.

50.     Moreover, Defendants, and each of them, treated Plaintiffs and the Class willfully and wantonly and with gross and reckless negligence, or in such a reckless disregard for their rights as is equivalent to such a wrong, thereby entitling Plaintiffs and the Class to punitive damages in a sum to be determined at a trial of this cause, but which is sufficient to punish Defendants, and each of them, and to deter Defendants, and each of them, and others similarly situated from engaging in similar conduct in the future.

## DEMAND FOR JURY

Plaintiffs and Plaintiff Class demands trial by jury on all the issues so triable.

## PRAYER

WHEREFORE, Plaintiffs and the Class Members demand judgment against Defendants, jointly, severally and in solido, as follows:

-17-

a.     An order certifying the Class for the purpose of going forward with any one or all of the causes of action alleged herein; appointing Plaintiffs as Class Representatives; and appointing undersigned counsel as counsel for the Class;

b.     Economic and compensatory damages in amounts to be determined at trial, but not less than the $5,000,000.00 required by the Class Action Fairness Act which establishes one of this Court's bases of jurisdiction to hear this case;

c.     Punitive damages;

d.     Pre-judgment and post-judgment interest at the maximum rate allowable by law;

e.     costs of litigation; and

f.     Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate; and

g.      A trial by jury as to all Defendants.

**RESPECTFULLY SUBMITTED BY:**

(s) Samuel T. Rees
Samuel T. Rees (LA Bar No. 30203)
26 Muirfield Place
New Orleans, Louisiana 70131
Telephone: (213) 220-9988
Fax: (323) 874-1234
STReesEsq@earthlink.net

AND

Thomas P. Bleau (CA Bar No. 152945)
Martin R. Fox (CA Bar No. 155783)
Bleau Fox
A Professional Law Corporation
3575 Cahuenga Boulevard West, Suite 580
Los Angeles, CA 90068
Telephone: (323) 874-8613
Fax: (323) 874-1234
tbleau@bleaufox.com
mfox@bleaufox.com

Attorneys for Plaintiffs and Plaintiff Class